*In re* BRACK ESTATE

Docket Nos. 47993, 55119. Submitted June 15, 1982, at Detroit.— Decided December 6, 1982.

Raymond J. Brack died intestate and probate proceedings were commenced in Wayne Probate Court. James R. Brack, the decedent's brother and administrator of the decedent's estate, filed a petition in the probate court for a determination of heirs alleging that he and the decedent's three sisters were the decedent's sole heirs. Vera W. Brack claimed to be the decedent's common-law wife. A jury subsequently determined that Vera W. Brack was the common-law widow of Raymond Brack. The court, Willis F. Ward, J., granted the petitioners a judgment *non obstante veredicto,* finding that Vera W. Brack was not Raymond Brack's widow. The court also granted the motion of the administrator and attorney for the estate for extra fiduciary fees to be paid from the estate corpus for litigating the claim of Vera W. Brack. Vera W. Brack appeals by leave granted both the judgment notwithstanding the verdict and grant of extra fiduciary and attorney fees. The Court of Appeals consolidated the cases. *Held:*

1. The trial court did not err in granting the judgment *non obstante veredicto.* The evidence was insufficient as a matter of law to support a finding of cohabitation between Vera W. Brack and the deceased. Cohabitation as husband and wife is a necessary element for a valid common-law marriage in Georgia, the state where the purported marriage occurred.

2. The trial court erred in granting the motion for extra fees

REFERENCES FOR POINTS IN HEADNOTES
[1] 5 Am Jur 2d, Appeal and Error § 886.

46 Am Jur 2d, Judgments § 106 *et seq.*

Practice and procedure with respect to motions for judgment notwithstanding or in default of verdict under Federal Civil Procedure Rule 50(b) or like state provisions. 69 ALR2d 449.

[2] 52 Am Jur 2d, Marriage §§ 53, 54, 95.

[3] 31 Am Jur 2d, Executors and Administrators §§ 180, 487, 497, 534, 535.

Amount of attorneys' compensation in absence of contract or statute fixing amount. 56 ALR2d 13.

for the administrator and attorney of the decedent's estate. The determination as to who were decedent's heirs did not benefit the estate in any manner but only affected the distribution scheme of the estate corpus. It was unnecessary for the administrator or attorney to contest Vera W. Brack's claim. The services rendered by the administrator and attorney benefited the heirs and the heirs should bear the costs for such services.

Affirmed in part and reversed in part.

1. JUDGMENTS — JUDGMENT NOTWITHSTANDING THE VERDICT.

A judgment notwithstanding the verdict is appropriate only if the evidence is insufficient as a matter of law to support a judgment for the plaintiff; in reviewing a motion for such a judgment, the Court of Appeals should give the nonmoving party the benefit of every reasonable inference that could be drawn from the evidence; if reasonable minds could honestly disagree as to whether a plaintiff has satisfied his burden of proof, a judgment notwithstanding the verdict is improper (GCR 1963, 515.2).

2. HUSBAND AND WIFE — COMMON-LAW MARRIAGE.

The State of Michigan recognizes the validity of common-law marriages entered into in accordance with the laws of states which do allow that form of marriage, although common-law marriages may no longer be contracted in Michigan.

3. EXECUTORS AND ADMINISTRATORS — DUTIES — FIDUCIARY FEES — ATTORNEY FEES.

It is the duty of an administrator of an estate to keep property insured and maintained and to protect the estate from unlawful demands; probate courts are authorized to compensate administrators for any extraordinary services which are just and reasonable and to approve reasonable compensation for services rendered by counsel for the estate; fees for the services of an administrator or attorney should be charged against an estate only where the services rendered were on behalf of and beneficial to the estate (MCL 700.541, 700.543; MSA 27.5541, 27.5543).

*Cassese & Krolik* (by *Henry A. Krolik* and *Joseph A. Cassese),* for respondent.

*Goldberg & Associates* (by *Robert W. Hayden),* for petitioners.

Before: V. J. Brennan, P.J., and D. C. Riley and V. R. Payant,* JJ.

D. C. Riley, J. These appeals are brought by Vera Williamson Brack, who claims to be the common-law wife of the deceased, Raymond J. Brack. Mr. Brack died intestate and probate proceedings were commenced in 1974. The appellees are the brother and sisters of Raymond who claim to be the sole heirs. The siblings do not recognize Vera as their brother's second wife.

In 1976, the probate court denied Vera's claim of a valid common-law marriage under the laws of Georgia. The circuit court reversed the decision of the probate court in 1978, for failure to allow a jury trial, and remanded the matter to the probate court for proceedings consistent therewith. A six-day jury trial in 1979 resulted in a finding that Vera was the common-law widow of Raymond Brack. On September 12, 1979, the court issued its written opinion granting the appellees' motion for judgment *non obstante veredicto,* thereby finding Vera not to be Mr. Brack's widow.

In Docket No. 47993, appellant raises six issues centering around whether the judgment notwithstanding the verdict, GCR 1963, 515.2, was proper. The appellant also asks this Court, in Docket No. 55119, to decide whether any fees should be paid to the administrator and his attorney, out of estate assets, for their participation in the instant heir-determination contest.

The standard of review for a judgment notwithstanding the verdict was recently stated in *Dayhuff v General Motors Corp,* 103 Mich App 177, 181; 303 NW2d 179 (1981). The Court stated:

---

* Circuit judge, sitting on the Court of Appeals by assignment.

"[A] judgment is appropriate only if the evidence is insufficient as a matter of law to support a judgment for plaintiff. In reviewing such a motion, we must give the nonmoving party the benefit of every reasonable inference that could be drawn from the evidence. If reasonable minds could honestly disagree as to whether plaintiffs have satisfied their burden of proof, judgment is improper."

The Georgia common law and the facts in this case must be considered to determine if the evidence is insufficient as a matter of law. Although common-law marriages may no longer be contracted in Michigan, this state does recognize the validity of common-law marriages entered into in accordance with the laws of states which do allow that form of marriage. 16 Callaghan's Michigan Civil Jurisprudence, Marriage, § 3, p 323. The purported marriage in this case took place in Georgia. For a valid common-law marriage to occur in Georgia, (1) the parties must be able to contract, (2) there must be an actual contract and (3) there must be consummation according to the law. *Brown v Brown,* 234 Ga 300, 301; 215 SE2d 671 (1975). Those three elements must occur all at one period of time for there to be a valid common-law marriage. *Brown, supra.* The Court in *Brown* defined consummation of the marriage, the most essential of the three elements, as cohabitation as husband and wife. Cohabitation is the act of living together as husband and wife and the parties must hold themselves out to the world as such, to friends, family, neighbors and visitors. *Fireman's Fund Ins Co v Smith,* 151 Ga App 270, 271; 259 SE2d 675 (1979). There exists at least some authority that the cohabitation must occur in Georgia. *Kersey v Gardner,* 264 F Supp 887, 889 (D Ga, 1967).

The trial court concluded that, as a matter of law, the evidence was insufficient to support a finding of cohabitation. On November 20, 1972, decedent and appellant purportedly exchanged marriage vows and engaged in sexual intercourse in Dalton, Georgia. That evening, appellant called her landlord in Michigan and informed him of her marriage to decedent. The next day, the parties continued traveling to Florida where they vacationed and were known as husband and wife. The couple returned to Michigan in December of 1972 and attended a wedding party for them held by friends at the Emerald City Boat Club.

In 1973, the couple returned to Florida and decedent purchased a mobile home in the Barefoot Bay retirement community. Decedent was the sole owner of record of the home. Appellant allegedly refused his request to purchase the home as joint tenants. The rationale for her decision was that she did not want to jeopardize any benefits that her retarded daughter received from the federal government by a change of her marital status. After spending some months in Florida, the couple returned to the Detroit area and proceeded to live in their separate residences, as they had always done. Although they frequently stayed at each other's house, appellant kept the name Williamson and both parties filed separate income tax returns.

The fact that appellant and decedent did not establish a single household in Michigan but, instead, maintained their separate domiciles is strong evidence which negates a finding of cohabitation. In addition, as the probate court noted, other facts exist which militate against the existence of a common-law marriage: (1) when appellant discovered the decedent dead, she notified the police and represented herself as decedent's girl-

friend; (2) at the funeral, appellant signed the guest book as Vera Williamson and (3) decedent did not tell his brother or sisters that he was married. At best, this record discloses an inconsistent position of the couple in their dealings with third parties.

The trial court concluded its well-reasoned opinion by noting:

"In Vera Williamson's own testimony, she was fearful of a marriage that would be officially known. Obviously, a valid common law [marriage] would have the same continuous legal effect as a ceremonial marriage. If, as her testimony implies that she and Ray would retire and live in Florida as two single persons and each enjoy their individual social security benefits, it would not be consistent with the public policy of the State of Michigan to condone such circumvention of the Federal laws. Nor can the State of Michigan allow its citizens to be married when it is convenient for their own purposes but single when it provides a financial or social advantage."

We conclude that the trial court did not err in granting a judgment *non obstante veredicto.*

The remaining issue is whether the administrator and estate's attorney were entitled to extra compensation from the estate for contesting appellant's common-law-widow status claim. The court granted to the administrator, James Brack, $500 in extra fiduciary fees and $6,000 in fees to the estate's attorney.

It is the duty of an administrator of an estate to keep property insured and maintained and to protect the estate from unlawful demands. *In re Winter's Estate,* 297 Mich 294, 301; 297 NW 497 (1941). Probate courts are authorized to compensate administrators for any extraordinary services

which are just and reasonable, MCL 704.33; MSA 27.3178(284), current version at MCL 700.541; MSA 27.5541, and to approve reasonable compensation for services rendered by counsel for the estate, MCL 704.34; MSA 27.3178(285), current version at MCL 700.543; MSA 27.5543. The Supreme Court has construed these acts to mean that administrator's and attorney's fees could be charged against an estate only where the services rendered were on behalf of and beneficial to the estate. *In re Baldwin's Estate,* 311 Mich 288, 314; 18 NW2d 827 (1945).

It is difficult to perceive how the estate was benefitted in any way by the administrator's participation in the heir determination process. The administrator, via the attorney he hired, did not increase or preserve the size of the decedent's estate by this litigation. See *Becht v Miller,* 279 Mich 629, 637-639; 273 NW 294 (1937). Instead, the administrator appears to have advanced his individual interests, along with his three other siblings, as an heir to the estate. The determination as to who were decedent's heirs did not benefit the estate in any manner but only affected the distribution scheme of the estate corpus. While it was necessary of course, for heirs to be determined so that the estate could be distributed, that was an issue to be resolved by the probate court. It was unnecessary for the administrator or the estate attorney to contest appellant's interest. Since the estate was not benefitted by the administrator's or estate's attorney's actions, we conclude that the fee awards were improper. The services rendered benefitted the heirs and the costs should be borne by them.

Affirmed in part and reversed in part.

Costs to appellees.